FILED

2019 Nov-25  AM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| ROY S. MOORE,<br><br>               Plaintiff,<br><br>v.<br><br>GUY CECIL; PRIORITIES USA;<br>SENATE MAJORITY PAC (SMP);<br>BULLY PULPIT INTERACTIVE<br>LLC; and WATERFRONT<br>STRATEGIES,<br><br>               Defendants. | Civil Action<br><br>Case No. 4:19-cv-01855-CLM |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO ATTORNEY KLAYMAN'S MOTION TO APPEAR *PRO HAC VICE*

Oppositions to *pro hac vice* applications are rare and should be asserted only when necessary.[1] Yet, Defendants here respectfully oppose Attorney Larry Klayman's motion to appear *pro hac vice* out of a serious concern that his involvement in this case would impede the orderly administration of justice. Mr. Klayman has a long history of litigation misconduct that makes it clear that he cannot be trusted to comply with the Court's rules, requirements of candor towards the Court and opposing counsel, or even basic expectations of respect.

---

[1] The undersigned does not recall ever before filing such an opposition.

"[P]ermission to appear *pro hac vice* is [a] *privilege,* [the] granting of which is within [the] sound discretion of [the] presiding judge." *Estate of Rowell v. Walker Baptist Medical Center*, 290 F.R.D. 549, 554 n.19 (N.D. Ala. 2013) (Emphasis in original; Citations omitted); *see also Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, No. 6:14-cv-307-Orl-40GJK, 2016 WL 6125585, at *2 (M.D. Fla., Oct. 20, 2016) ("The ability to appear *pro hac vice* is a privilege, not a right, and may be revoked by the Court upon a finding of misconduct."); *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 744 F.Supp.2d 1297, 1304 n.11 (S.D. Fla. 2010) ("*Pro hac vice* admission is a privilege, not a right, and may be refused and, if initially granted, revoked.").

To deny a *pro hac vice* application filed in the Eleventh Circuit, a court must determine that the applicant has, "in any legal matter, whether before the particular court or in another jurisdiction, . . . been guilty of unethical conduct of such a nature as to justify disbarment of a lawyer admitted generally to the bar of the court." *P.G. Oil Corp. v. Motiva Enters., LLC*, 397 F. Supp. 2d 1359, 1361 (S.D. Fla. 2005) (quoting *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1559 (11th Cir. 1997)). "The court must clearly identify a specific Rule of Professional [C]onduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Id.* at 1363 (quoting *Schlumberger*, 113 F.3d at 1561). The Alabama Rules of Professional Conduct and the American Bar Association Model Rules of

- 2 -

Professional Conduct (except for its Rule 3.8(f)) govern the professional conduct of this Court's bar membership. *See* N.D. Ala. L. Civ. R. 83.1(f).

Here, that high standard is met — indeed, exceeded — by Mr. Klayman's long history of repeated ethical failures and misconduct. Two different judges who had permitted Mr. Klayman to appear *pro hac vice* have since **permanently barred him from appearing before them ever again**. A judge sitting on the Southern District of New York sanctioned Mr. Klayman and permanently revoked his *pro hac vice* admission after Mr. Klayman questioned the judge's impartiality due to the judge's race and the political affiliation of the president who appointed him. *Macdraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 994 F. Supp. 447, 455 (S.D.N.Y. 1997), *aff'd* 138 F.3d 33 (2d Cir. 1998) (describing Mr. Klayman's conduct towards the judge as "insulting and smack[ing] of intimidation"). And after sanctioning Mr. Klayman for "fail[ing] to comply with local rules and for unreasonably and vexatiously multiplying the proceedings," a judge in the Central District of California "permanently and prospectively barr[ed] Mr. Klayman from appearing before him" in the future. *Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550, 555, 561 (Fed. Cir. 1996) (internal quotation marks omitted) (affirming district court's actions).

Putting those alarming incidents aside, the sheer number of cases in which courts have sanctioned or reprimanded Mr. Klayman, or denied him admission *pro*

- 3 -

*hac vice*, should give the Court pause before granting him the privilege of litigating in this Court. The following is a partial listing:

- *Robles v. In the Name of Humanity, We REFUSE to Accept a Fascist America*, No. 17-cv-04864-CW, 2018 WL 2329728, at *2–3 (N.D. Cal. Oct. 20, 2018) (tentatively revoking Mr. Klayman's *pro hac vice* admission and noting that "Klayman continues to demonstrate a lack of candor and respect for the orderly administration of justice");

- *United States v. Bundy*, No. 2:16-cr-046-GMN-PAL (D. Nev. Mar. 31, 2016), ECF No. 215 (denying Mr. Klayman admission *pro hac vice* due to his "failure to fully disclose disciplinary actions and related documents");

- *Klayman v. City Pages*, No. 5:13-cv-00143-ACC-PRL, 2015 WL 1546173, at *8 n.7 (M.D. Fla. Apr. 3, 2015) (noting that Mr. Klayman "has routinely shown a disregard for [the court's] Local Rules" and that "the Court has become quite frustrated with Plaintiff's various tactics to avoid Court rules throughout the course of this litigation");

- *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 139 (D.D.C. 2011) (describing "[Mr.] Klayman's consistent pattern of engaging in dilatory tactics, [] disobedience of Court-ordered deadlines, and [] disregard for the Federal Rules of Civil Procedure and the Local Rules of this Court," and noting that "the Court's use of lesser sanctions in the past [had no] discernible effect on Klayman's conduct in this litigation");

- *Klayman v. Barmak*, No. 08-1005 (JDB), 2009 WL 4722803, at *1 (D.D.C. Dec. 4, 2009) (noting that Mr. Klayman was previously sanctioned in the case for "failing to comply with even the most basic of discovery requirements," and describing how Mr. Klayman had requested six different extensions to respond to a single motion to dismiss);

- 4 -

- *Dely v. Far E. Shipping Co.*, 238 F. Supp. 2d 1231, 1235, 1241 (W.D. Wash. 2003) (describing Mr. Klayman's "baseless and offensive," "bizarre," and "beyond far-fetched" accusations of misconduct by the presiding judge);

- *Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*, 159 F. Supp. 2d 763, 764 (D.D.C. 2001) (describing as "sanctionable" Mr. Klayman's "forked tongue" response to an inquiry from the court, which Mr. Klayman misleadingly provided with "malicious glee");

- *Alexander v. F.B.I.*, 186 F.R.D. 197, 198, 199 (D.D.C. 1999) (describing Mr. Klayman's repeated "disregard of the local rules of this court," noting that the court had to remind Mr. Klayman of the court's local rule "at least three times before");

- *Material Supply Int'l, Inc. v. Sunmatch Indus., Co.*, No. Civ. A. 94-1184 (RMU), 1997 WL 243223, at *8 n.7 (D.D.C. May 7, 1997) ("[F]rom pretrial through post trial proceedings, Mr. Klayman's performance was episodically blighted by rude and unprofessional behavior which was directed towards the presiding judge and opposing counsel.");

- *Wire Rope Importers' Ass'n v. United States*, 18 C.I.T. 478, 485 (Ct. Int'l Trade 1994) (sanctioning Mr. Klayman because his "frivolous filings have wasted time and resources of defendant as well as of the court").[2]

Indeed, after reviewing Mr. Klayman's history of misconduct, the Ninth Circuit recently remarked that Mr. Klayman "has made it a pattern or practice of

---

[2] Additionally, in 2011 Mr. Klayman was disciplined by the Florida Bar after pleading guilty to accepting a retainer from a client and failing to provide services in her criminal case. (A copy of the Florida Supreme Court's judgment is attached as Exhibit A).

impeding the ethical and orderly administration of justice." *In re Bundy*, 840 F.3d 1034, 1049 (9th Cir. 2016); *see also id.* at 1043, 1049 (refusing to order a district court to admit Mr. Klayman *pro hac vice* in a criminal case because the district court properly concluded that Mr. Klayman's "record shows a 'total disregard for judicial process' and his admission . . . would thus 'impede the orderly administration of justice'").

But there's more. Mr. Klayman is also currently the subject of formal disciplinary proceedings in the District of Columbia for additional instances of unethical behavior. In July of this year, a panel from the District of Columbia Court of Appeals Board on Professional Responsibility issued a recommendation that Mr. Klayman's license be suspended for nearly three years after finding clear and convincing evidence that Mr. Klayman violated D.C. Bar Rules 1.2(a) (failure to abide by a client's decisions); 1.4(b) (failure to explain a matter to a client to permit the client to make informed decisions); 1.6(a)(1), (a)(3), and (e)(1) (disclosure of client secrets, without the client's consent, for purposes of personal advantage); 1.7(b)(4) (conflict of interest); and 1.16(a)(3) (failure to withdraw from representation of a client after being terminated as counsel). *See In re Klayman*, Bar Docket No. 2011-D028 (July 24, 2019) (A copy of which is attached as Exhibit B).

Separately, early last year the D.C. Court of Appeals Board on Professional Responsibility recommended that Mr. Klayman's license be suspended as a result of

- 6 -

his engaging in representation despite a clear conflict of interest in violation of D.C. Bar Rule 1.9. *In re Klayman*, Board Docket No. 13-BD-084 (Feb. 6, 2018) (A copy of which is attached as Exhibit C).[3]

Finally, Mr. Klayman's conduct in this case has already suggested that he will not be candid with the Court. In his *pro hac vice* application and amended application, Mr. Klayman states that he is currently in good standing with the D.C. Bar, yet misleadingly fails to disclose the disciplinary proceedings and recommended suspensions just discussed. *See* ECF Nos. 4 & 5. Moreover, there is no indication that Mr. Klayman's application complies with this Court's Local Rule 83.1(f).

Mr. Klayman's behavior in the cases described above violates a laundry list of this Court's applicable professional-conduct rules. *E.g.*, Ala. R. Prof'l Conduct 3.1(a) (prohibiting actions "when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another"); 3.2 (requiring "reasonable efforts to expedite litigation" and prohibiting dilatory practices); 3.3(a) ("A lawyer shall not knowingly [] [m]ake false statement[s] of material fact or law to a tribunal."); 3.4(c) ("A lawyer shall not [] [k]nowingly disobey an obligation

---

[3] Mr. Klayman has apparently appealed from both suspensions. He has also unsuccessfully sued the D.C. disciplinary authorities in an effort to thwart the board's investigation of his ethical misconduct. *See Klayman v. Lim*, No. 18-2209 (RDM), 2019 WL 2396539, at *1 (D.D.C. June 5, 2019) (dismissing Klayman's claims against the D.C. Bar for failure to state a claim), *appeal filed*, (D.C. Cir., Aug. 30, 2019).

under the rules of a tribunal . . .”); 3.5(c) (“A lawyer shall not [] [e]ngage in conduct intended to disrupt a tribunal.”); 3.5 cmt. (“Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants.”); *see also* Model Rules of Prof'l Conduct 3.1(a), 3.2, 3.3(a), 3.4(c), 3.5(c). And the disciplinary proceedings against Mr. Klayman in the District of Columbia implicate several others. Ala. R. Prof'l Conduct 1.2(a), 1.4(b), 1.6(a),  1.7(b), 1.9, 1.16(a)(3); Model Rules of Prof'l Conduct 1.2(a), 1.4(b), 1.6(a), 1.6(a), 1.7(a)(2), 1.9(a), 1.16(a)(3).

The severity and repeated nature of this misconduct would warrant disbarment were Mr. Klayman a member of this Court's bar. *See* Ala. Stands. for Imposing Lawyer Discipline 5.11(b) (“Disbarment is generally appropriate when [] [a] lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.”); *see also P.G. Oil*, 397 F. Supp. 2d at 1363–64 (denying *pro hac vice* application because attorney had been previously sanctioned for misusing a trial exhibit and had been denied *pro hac vice* admission in another case for making misrepresentations to the court, both of which would warrant disbarment from the district court's membership).[4]

---

[4] The Eleventh Circuit has held that '[i]f a District Court has evidence of behavior that it believes justifies denying an attorney admission pro hac vice, it must give the attorney adequate notice of

In sum, Mr. Klayman's professional history — which includes lying to and attacking the character of judges, willfully ignoring procedural rules, and manipulating the judicial process — warrants this Court's denial of the privilege of appearing in this case. Defendants therefore request that the Court deny Mr. Klayman's application to appear *pro hac vice*.

Respectfully submitted,

/s/ *Barry A. Ragsdale*
Barry A. Ragsdale (RAG003)
Meghan S. Cole (SAL035)
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Birmingham, AL 35205
Tel.: (205) 930-5100
Fax: (205) 930-5101
bragsdale@sirote.com
mcole@sirote.com

*Attorneys for Defendants*

---

the ethical charges and set a hearing on the issue." *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1559 (11th Cir. 1997); *see also In re Evans*, 524 F.2d 1004, 1008 (5th Cir. 1975).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2019, I filed a copy of the foregoing Defendants' Memorandum in Opposition to Attorney Klayman's Motion to Appear *Pro Hac Vice* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Melissa L. Isaak
The Isaak Law Firm
2815B Zelda Road
Montgomery, AL 36106


*/s/ Barry A. Ragsdale*
OF COUNSEL


cc:    Larry E. Klayman

- 10 -

DOCSBHM\2300528\2