FILED
2020 Jan-13  PM 06:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| ROY S. MOORE, | |
| Plaintiff, | Civil Action |
| v. | Case No. 4:19-cv-01855-CLM |
| GUY CECIL; PRIORITIES USA; SENATE MAJORITY PAC (SMP); BULLY PULPIT INTERACTIVE LLC; and WATERFRONT STRATEGIES, | |
| Defendants. | |

## DEFENDANTS' MOTION TO DISMISS

### I.      Introduction

During Roy Moore's 2017 failed campaign for the United States Senate, numerous women spoke publicly about inappropriate sexual advances Moore made when they were teenagers and he was in his thirties. Unsurprisingly, these allegations were widely reported in local and national media and broadly discussed during the campaign.

Two years later, in an attempt to chill speech critical of him during his current campaign for the same U.S. Senate seat, Moore now plucks five Defendants from the hordes of political actors, commentators, and media outlets who discussed the gravely serious and widely reported allegations against him and asserts baseless claims of defamation and intentional infliction of emotional distress.

Unsurprisingly, given the conspicuously political nature of Moore's timing, the facts he alleges are plainly deficient—as a matter of law—to state plausible claims for relief. As a threshold matter, this Court lacks personal jurisdiction over Defendant Cecil.[1] But even if this was not the case, Moore fails to state a claim.

Moore's defamation-related claims fail as a matter of law. Moore is a public figure. He does not—as he must—set out facts rendering plausible the claim that any Defendant made a false and defamatory statement with actual malice, an onerous standard designed to ensure that public figures such as Moore cannot evade public scrutiny through punitive defamation lawsuits. Indeed, by their own terms, Moore's allegations prove that when the statements at issue were made, those involved with the statements had significant reason to believe that they were true. And even assuming that any statements were false in fact, and even if Moore could establish actual malice, which he cannot, he could not have suffered any reputational harm as a result. For all these reasons, Moore's defamation claim fails as a matter of law.

As to his intentional infliction of emotional distress claim, Moore fails on every element. He fails to plead that (a) Defendants acted with actual malice; (b) he suffered objective symptomology of emotional distress; or (c) causation.

Because Moore's allegations do not state a claim for relief, and any attempt to cure their deficiencies would be futile, Defendants respectfully request this Court

---

[1] The remaining Defendants will not dispute personal jurisdiction for purposes of this motion.

dismiss the Complaint with prejudice.

## II.     Allegations and Materials Referenced in the Complaint

In the fall of 2017, Alabama Republicans nominated Roy Moore to run for the State's vacant U.S. Senate seat. Compl. ¶ 9. On November 9, 2017, the *Washington Post* broke a bombshell story that "when Moore was a thirty-two-year-old assistant district attorney in Etowah County, he brought Leigh Corfman, who was fourteen years old at the time, to his home and sexually molested her." Ex. 1 at 2.[2] "Three additional women told the *Post* that Moore had pursued them when they were in their teens and he was in his early thirties," two of whom said "they first met Moore at the Gadsden Mall." Ex. 1 at 2. A few days later, "another woman, Beverly Young Nelson, said that Moore assaulted her when she was sixteen years old." *Id.*

These allegations were repeated by countless news outlets and led many people to come forward with knowledge of Moore's inappropriate conduct toward teenage girls. Days later, on November 12, the *New American Journal* reported that "[a] former prosecutor who worked alongside Moore in the early 1980s told CNN it was known at the time that Moore dated high schools girls," and that "[s]ources tell me Moore was actually banned from the Gadsden Mall and the YMCA for his inappropriate behavior of soliciting sex from young girls." Ex. 2 at 2. The next day,

---

[2] Because the news articles attached to this motion as exhibits are cited in the Complaint and are central to Moore's claims, and because their authenticity cannot be disputed, the Court may consider their contents in resolving Defendant's Rule 12(b)(6) motion. *See SFM Holdings, Ltd. v. Banc of AM. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

the *New Yorker* published an article entitled "Locals Were Troubled by Roy Moore's Interactions with Teen Girls at the Gadsden Mall." *See* Ex. 1. The author explained: "[t]his past weekend, I spoke [to] or messaged with more than a dozen people—including a major political figure in the state—who told me that they had heard, over the years, that Moore had been banned from the mall because he repeatedly badgered teen-age girls. Some say that they heard this at the time, others in the years since. These people include five members of the local legal community, two cops who worked in the town, several people who hung out at the mall in the early eighties, and a number of former mall employees." *Id.* at 3.

Among these sources was Greg Legat, who worked at the mall from 1981 to 1985. Legat's "understanding then was that" Moore was banned sometime "around 1979"; his boss and a Gadsden police officer also told him to look out for Moore. Ex. 1 at 4. Teresa Jones, who served as an Etowah County deputy district attorney in the early eighties, told the author "it was common knowledge that [Moore] dated high-school girls" and she heard rumors "for years" that Moore was banned from the mall. *Id.* at 3-4. Two Gadsden police officers also told the author "Moore's presence at the mall was regarded as a problem." *Id.* at 5. The first officer stated a girl had told him Moore was "run off" from a "number of stores," but "[m]aybe not legally banned" from the mall, but he had also "heard from one girl who had to tell the manager of a store at the mall to get Moore to leave her alone." *Id.* The second

officer was told by a friend that Moore "was banned" from the mall. *Id.* The author

continued:

> [The second officer] added, "I actually voted for Moore. I liked him at
> one time. But I'm basically disgusted now, to be honest with you. Some
> of the things he's said recently, I've changed my tune completely about
> this guy." He went on, explaining why Moore no longer appeals to him.
> "When I heard what he said on 'Hannity' the other night," he said,
> referring to an appearance Moore made on Sean Hannity's radio show
> last Friday, "I almost stood straight up. The thing about how he's never
> dated anybody without their mother's permission, that appalled me.
> That made me want to throw up. Why would you need someone's
> permission to date somebody?"

*Id.* at 5-6. The author encountered just two individuals who suggested Moore might

not have been banned from the mall. A former mall manager "who began working

there in the late eighties . . . did not recall Moore being" on a "ban" list. *Id.* at 4. And

Barnes Boyle, a friend of Moore's who was a manager between 1981 and 1998 and

planned to vote for Moore in the 2017 election, thought the allegations against

Moore were "liberal propaganda." The author also noted that Moore personally

denied Corfman's allegations, and regarding the "other women," Moore stated "he

couldn't be expected to remember every woman he'd ever dated": "'[a]fter my return

from the military,' he said, 'I dated a lot of young ladies.'" *Id.* at 6.

On November 13, *AL.com* published an article discussing these allegations.

*See* Compl. Ex. B. The article stated "Moore's flirting with and dating much younger

women and girls was no secret." *Id.* Blake Usry, who grew up in Gadsden, told the

author "these stories have been going around this town for 30 years," "[n]obody

could believe they hadn't come out yet," and it was "'frustrating to watch' the public disbelieve the women who have come forward." *Id.* Another resident, Wendy Miller, said Moore "first spoke with her and told her she looked pretty" when "she was 14 and working as Santa's helper at the Gadsden Mall in 1977." *Id.* "Five other current and former Etowah County residents also spoke to *AL.com* with similar accounts." *Id.* One was Sheryl Porter, who said Moore's "liking and dating young girls was never a secret in Gadsden," and it was "just sad how these girls (who accused Moore) [we]re getting hammered and called liars, especially Leigh (Corfman)." *Id.* The author also noted that Jones, who was quoted in the *New Yorker* piece, had since tweeted that Moore's "propensity for teenage girls" was "common knowledge," and she was "appalled that these women are being skewered for the truth." *Id.*

By the time the statements at issue in this suit were made, a national media firestorm had erupted over the deluge of allegations against Moore.[3] Moore's claims

---

[3] *E.g.*, Elizabeth Elizade, *Retired Alabama Cop on Roy Moore: 'We Were Also Told To . . . Make Sure That He Didn't Hang Around the Cheerleaders'*, SEATTLE TIMES (Nov. 21, 2017), https://www.seattletimes.com/nation-world/retired-alabama-cop-on-roy-moore-we-were-also-told-to-make-sure-that-he-didnt-hang-around-the-cheerleaders/; Stephanie McCrummen et al., *Two More Women Describe Unwanted Overtures by Roy Moore at Alabama Mall*, WASH. POST (Nov. 16, 2017), https://www.washingtonpost.com/investigations/two-more-women-describe-unwanted-overtures-by-roy-moore-at-alabama-mall/2017/11/15/2a1da432-ca24-11e7-b0cf-7689a9f2d84e_story.html; Chris Francescani, *Roy Moore Accuser: I Got Him Banned from the Mall*, ABC NEWS (Nov. 16, 2017), https://abcnews.go.com/Politics/roy-moore-accuser-banned-mall/story?id=51195632; Paul Gattis, *Ivanka Trump on Roy Moore Allegations: 'No Reason to Doubt Victims'*, AL.COM (Nov. 15, 2017), https://www.al.com/news/2017/11/ivanka_trump_on_roy_moore_alle.html; *Roy Moore: Two More Women Come Forward Alleging Sexual Assault*, THE GUARDIAN (Nov. 15, 2017), https://www.theguardian.com/us-news/2017/nov/15/roy-moore-allegations-alabama-high-school-student; Nicole Hong, *Woman*

in this suit center on three groups of statements he attributes to Defendants, made while the national spotlight shone on Moore's relationships with underage girls: (1) the "TV Ad," (2) the "Online Ad," and (3) online statements made by Cecil.

The TV Ad was a political advertisement that a federally registered political committee named Highway 31 ran on television between November 27 and December 6, 2017. Compl. ¶ 13. It began with the statement "What do people who know Roy Moore say?" and set out five accurate quotations from the articles just discussed, with citations to the corresponding articles beneath each quotation's text. The first came from the November 12 article: "Moore was actually banned from the Gadsden mall . . . for soliciting sex from young girls." *Id.* The next three quotations came from the November 13 *AL.com* article: Miller's statement that Moore approached her when she "was 14 and working as Santa's helper," Usry's statement that "[t]hese stories have been going around this town for 30 years," and Jones' statement that "[t]hese women are being skewered for the truth." *Id.* The last quotation came from the *New Yorker* article: "Gadsden Police Officer: 'I actually

---

*Accuses Roy Moore of Sexually Assaulting Her When She Was A Teen*, WALL ST. J. (Nov. 13, 2017), https://www.wsj.com/articles/woman-accuses-roy-moore-of-sexually-assaulting-her-when-she-was-a-teen-1510608351; Jonathan Martin et al., *Roy Moore Is Accused of Sexual Misconduct by a Fifth Woman*, N.Y. TIMES (Nov. 13, 2011), https://www.nytimes.com/2017/11/13/us/politics/roy-moore-alabama-senate.html; Jessica Taylor et al., *Woman Accuses Alabama Senate Candidate Of Sexual Contact When She Was 14*, NPR (Nov. 9, 2017), https://www.npr.org/2017/11/09/563087945/woman-accuses-alabama-senate-candidate-of-sexual-contact-when-she-was-14. The Court may take judicial notice of the existence of this reporting. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

voted for Moore . . . but I'm basically disgusted now.'" *Id.* Moore asserts this advertisement, consisting of accurate quotations set out in prior media reports, is defamatory.

The Online Ad refers to an online political advertisement Highway 31 ran in December 2017 that stated: "If you don't vote and Roy Moore—a child predator—wins, could you live with that? Your vote is public record, and your community will know whether or not you helped stop Roy Moore. Tuesday, December 12th, vote for Doug Jones for Senate." Compl. ¶ 31.

Finally, on December 6 and 12, 2017, Cecil—Priorities USA's chairman—posted four tweets referencing the accusations against Moore and noting that the national Republican Party nonetheless continued to support Moore. Compl. ¶¶ 4, 40, Ex. H-1. On December 12, *Politico* quoted Cecil discussing the accusations against Moore. *Id.* ¶ 40. And after Moore lost the election, Cecil made a statement in a Priorities USA press release that was "disseminated to all media." *Id.* ¶ 60, Ex. H-2.

Before the dust had settled after the election, Moore sued his accusers and others, alleging a top-to-bottom conspiracy supposedly including U.S. Supreme Court Justice Ruth Bader Ginsburg, "the liberal media," the Alabama Democratic Party, and Gloria Allred. *Moore v. Hagedorn*, No. 31-CV-2018-900346.00 (Etowah Cty., Ala. Cir. Ct. filed Apr. 30, 2018) (Ex. 3). Moore separately sued Highway 31, Priorities USA, Waterfront Strategies, Bully Pulpit Interactive, LLC, and others—a

few actors out of the dozens, perhaps hundreds, of media outlets and political advertisers that had discussed the accusations of Moore's misconduct. *Moore v. Muhlendorf*, No. 31-CV-2018-900551.00 (Etowah Cty., Ala. Cir. Ct. filed July 25, 2018) (Ex. 4). Moore voluntarily dismissed the latter suit on September 7, 2018. But on November 15, 2019—nearly two years after the events underlying this suit and after entering the current race for Alabama's upcoming U.S. Senate election— Moore re-filed the suit in federal court. *See* Compl.

## III.   Argument

### A.   This Court cannot assert jurisdiction over Defendant Cecil.

Because Moore cannot carry his burden to establish personal jurisdiction over Cecil—who has no connection to Alabama—the claims against Cecil should be dismissed under Federal Rule of Civil Procedure 12(b)(2).

#### 1.   Legal standard for Rule 12(b)(2) challenge.

It is Moore's burden to establish that the Court can assert personal jurisdiction over each Defendant. *First Metro Bank v. Cent. Bank*, 904 F. Supp. 2d 1215, 1216 (N.D. Ala. 2012). In response to a personal jurisdiction challenge, the Court "accept[s] all allegations of the plaintiff's complaint as true, except to the extent that the defendant presents evidence to contradict those allegations," after which "the burden shifts back to plaintiff to produce evidence supporting personal jurisdiction." *Id.* (internal quotation marks omitted). The Court may assert jurisdiction only if

Moore offers "enough evidence to withstand a motion for directed verdict." *Id.*

This Court's jurisdiction corresponds to the limits of Alabama's long-arm statute, which extends to the limits of federal due process. *First Metro*, 904 F. Supp. 2d at 1223. Jurisdiction may be "general" or "specific." A defendant is subject to general jurisdiction when she has "continuous and systematic" contacts with a forum; "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). For specific jurisdiction, Moore must show a "substantial connection" between the conduct at issue in this case and Alabama. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). To make that showing as to Cecil, Moore must prove Cecil engaged in contacts with Alabama that: (1) "are related to, or give rise to," Moore's claims, (2) "involve some act by which [Cecil] purposefully avail[ed him]self of the privilege of conducting activities" in Alabama, and (3) are "such that [Cecil] should [have] reasonably anticipate[d] being haled into court" here. *First Metro*, 904 F. Supp. 2d at 1224. A tort plaintiff may show purposeful availment by proving the tort was (1) "intentional"; (2) "aimed at" Alabama; and (3) "caused harm that the defendant should have anticipated would be suffered in" Alabama. *Smarter Every Day, LLC v. Nunez*, No. 2:15-cv-1358-RDP, 2017 WL 1247500, at *4 (N.D. Ala. April 5, 2017). In the defamation context, "aimed" means the statement was disseminated with the intent that it be read

particularly by those in the forum jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 288 n.7 (2014). This analysis focuses on the "contacts that the defendant himself creates with the forum state," and "not the defendant's contacts with persons who reside there"; thus, Moore's relationship to Alabama—and that he might assert that he has been injured while in the State—is irrelevant. *Id.* at 284-85, 289-90.

## 2.   Assertion of personal jurisdiction over Defendant Cecil would violate his right to due process.

Moore cannot meet his burden of establishing jurisdiction over Cecil. Because "[j]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984), Moore's allegations that Priorities USA engaged in conduct targeting Alabama does not implicate Cecil. And the allegations regarding Cecil's own conduct are far from adequate to support personal jurisdiction.

As an initial matter, because Cecil is not domiciled in Alabama, Ex. 5 ¶¶ 2-3, "general jurisdiction does not apply." *Biodesix, Inc. v. Circulogene Theranostics, LLC*, No. 2:18-cv-1865-AKK, 2019 WL 142326, at *1 (N.D. Ala. Jan. 9, 2019).[4]

Nor can Moore show his claims arise from any actions by Cecil that would

---

[4] While one federal court in Alabama has suggested it can assert general jurisdiction over a non-domiciliary whose contacts with the State are so pervasive to be "continuous and systematic," *Peavy v. Axelrod*, No. 17-142-KD-MU, 2017 WL 3444747, at *6 (S.D. Ala. June 27, 2017), that is not the case here. Cecil has never owned or rented property, paid taxes, or solicited business in Alabama; he has never had any direct investments in any Alabama business; he has never been employed by an Alabama business or resident; and he has never been a litigant in a court in Alabama. Ex. 5 ¶¶ 2-12.

support specific jurisdiction. Cecil allegedly made statements on three Internet platforms: (1) Twitter, (2) an article published in *Politico*, and (3) a Priorities USA press release. Compl. ¶¶ 40-41, 60, Exs. H-1, H-2. Cecil was not in Alabama when he made these statements. Ex. 5 ¶ 13.

First, Cecil's tweets cannot support specific jurisdiction because they were not "aimed" at an Alabama audience. Three of the four tweets were direct responses to statements made by individuals involved in national politics who have no connection to Alabama. Compl. Ex. H-1 (responding to posts by Ward Baker, Kellyanne Conway, and Ronna McDaniel); Ex. 5 ¶¶ 14-16. The remaining tweet was explicitly addressed to the Republican National Committee. Compl. Ex. H-1 ("To the @GOP . . ."); Ex. 5 ¶ 17. The Complaint makes no suggestion that Cecil's Twitter "followers" are concentrated in Alabama. Instead, Cecil's "posts were meant for a national or even international audience," and "the only connection" between his tweets and Alabama "is Plaintiff's [alleged] injury," which is insufficient to establish specific jurisdiction. *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015). Due process does not allow Cecil to be haled into court in Alabama simply because he commented about an Alabamian "in a[n online] forum accessible by practically every person whose computer has access to the Internet." *Novak v. Benn*, 896 So. 2d 513, 517 (Ala. Civ. App. 2004).

Second, *Politico*'s quotation of Cecil cannot support specific jurisdiction.

*Politico* is a Virginia-based media organization that generates content aimed at a global audience. Ex. 5 ¶ 18. Even assuming some Alabamians read the *Politico* article, Cecil's agreement to be quoted in it does not produce specific jurisdiction. *Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990) (holding court lacked jurisdiction over out-of-state defendant who gave interview to out-of-state magazine, even when defendant was "aware[] that a small number of copies of the magazine might find their way to" forum state); *Young v. New Haven Advocate*, 315 F.3d 256, 261-64 (4th Cir. 2002) (court lacked jurisdiction over out-of-state newspaper and its employees even though article at issue was about a prison in the forum state and "the primary effects of the defamatory statements . . . were felt in" forum state).

Third, as Moore admits, the Priorities press release was disseminated "to all media," Compl. ¶ 60, not any particular Alabama audience. That Cecil's statement was about Moore, or that the release was accessible to Alabamians over the Internet, does not allow jurisdiction over Cecil. *Walden*, 571 U.S. at 289 (holding out-of-state defendant's actions did not support jurisdiction "simply because he allegedly directed his conduct at plaintiffs whom he knew had [forum state] connections"); *Young*, 315 F.3d at 263 ("Something more than posting and accessibility is needed to indicate [the speaker] purposefully (albeit electronically) directed [its] activity in

a substantial way to the forum state."); *Novak*, 896 So. 2d at 517 (same).[5]

Because none of Cecil's statements were aimed at Alabama, and nothing suggests Cecil purposefully availed himself of Alabama's jurisdiction in making them, assertion of jurisdiction over Cecil would violate his right to due process.

## B.   The Complaint fails to state a claim for relief.

Moore asserts three claims, styled as defamation, defamation by implication, and intentional infliction of emotional distress ("IIED"). Compl. ¶¶ 57-69. Under well-established precedent, his allegations do not render those claims plausible. Because these defects are incurable and any amendment "would be futile," each claim should be dismissed with prejudice. *SFM Holdings*, 600 F.3d at 1340.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" should be dismissed. To survive, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d

---

[5] For these same reasons, Moore also cannot satisfy the "traditional minimum contacts analysis." *See Tolbert v. High Noon Prods., LLC*, No. 4:18-cv-680-KOB, 2019 WL 6311433, at *4 (N.D. Ala. Nov. 25, 2019) (explaining that, in a tort case, a court may use the "effects test" analyzed above or the "traditional minimum contacts" test). Nothing about any of the statements just discussed suggest that, by making statements to a national audience over the Internet, Cecil purposefully availed himself of any privileges of doing business in Alabama.

1182, 1188 (11th Cir. 2002). Rather, the Complaint must "plead[] *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (emphasis added).

### 1. Moore fails to state a claim for defamation.

Moore fails to establish the basic elements of defamation. Under Alabama law, a plaintiff must allege (1) "a false and defamatory statement about the plaintiff"; (2) "unprivileged communication of that statement to a third party" by the defendant; (3) "fault amounting at least to negligence by the defendant"; and (4) "actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003). If the plaintiff is a public figure, the First Amendment requires him to show by clear and convincing evidence that any statement was "made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). This requirement "reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," even when it "include[s] vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.* at 270. "That is 'because speech concerning public affairs is more than self-expression; it is the essence of self-government.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Garrison v.*

*Louisiana*, 379 U.S. 64, 74-75 (1964)). Accordingly, "[t]o preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017).

Because his allegations regard his candidacy for the U.S. Senate, Moore is a public figure. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271-72 (1971). Thus, Moore "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (quoting *Sullivan*, 376 U.S. at 280). "Ill-will, improper motive or personal animosity plays no role in determining whether a defendant acted with 'actual malice.'" *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 (11th Cir. 1999).[6] Rather, "[a] defendant acts with 'reckless disregard' if, at the time of publication, the defendant entertained *serious doubts* as to the truth of its publication or acted with a *high degree of awareness* of . . . its probable falsity." *Smith v. Huntsville*

---

[6] Moore's attacks and attempts to make Defendants appear "unscrupulous," *see* Compl. ¶¶ 16, 38, 62, may make sense if one views Moore's Complaint as a political document filed in conjunction with his renewed Senate campaign, but they are irrelevant to the actual-malice standard. *Klayman v. City Pages*, 650 F. App'x 744, 750 (11th Cir. 2016) ("Mr. Klayman's characterizations of the defendants are immaterial as to whether they actually had doubts about the veracity of the statements or alleged implications.").

*Times Co., Inc.*, 888 So. 2d 492, 499 (Ala. 2004) (internal quotation marks and alterations omitted). "Th[is] test is not an objective one and the beliefs or actions of a reasonable person are irrelevant." *Michel*, 816 F.3d at 702-03. The Court should consider whether (1) the "story is fabricated by the defendant [and] is the product of his imagination," (2) the story "is based wholly on an unverified anonymous telephone call," (3) the "publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation," and (4) "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968). Importantly, "[t]he subjective awareness of probably falsity required by [*Sullivan* and its progeny] cannot be found where, as here, the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied." *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978).[7]

As to each allegedly defamatory statement, Moore has not only failed to plead facts from which actual malice might reasonably be inferred; he has demonstrated that he cannot do so. This claim should therefore be dismissed with prejudice.

### a.   The Complaint fails to allege actual malice with respect to the TV Ad.

Moore's defamation claim regarding the TV Ad fails because he has not

---

[7] Issued prior to 1981, the Fifth Circuit's decision in *Rosanova* is controlling on this Court. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

alleged, and cannot allege, facts plausibly suggesting actual malice. The TV Ad includes five accurate quotations from news sources. Given the content of the articles cited in the TV Ad, those involved with the TV Ad had beyond a reasonable basis to believe that the quoted statements had been made and that they were true.

The TV Ad made no actual claims about Moore. Rather, it repeated prior statements made about him by quoting news articles in well-established media. These statements' auspices gave Defendants reason to believe the statements had been made, and they also offered significant reason to believe that Moore was indeed banned from the Gadsden Mall for soliciting sex from teenage girls. The author of the *New Yorker* article traveled to Gadsden and found "more than a dozen people," including "a major political figure in the state," who corroborated these assertions. Ex. 1.[8] Moreover, by the time the TV Ad was released, at least five women had publicly accused Moore of pursuing them while they were teenagers—one stated he sexually molested her when she was 14, and another claimed he sexually assaulted her when she was 16. Ex. 1. A multitude of sources in the other articles cited by the TV Ad confirmed Moore inappropriately pursued teenage girls while in his thirties.

---

[8] That some of the sources were not named in these articles "does not render them or the reliance on them invalid," particularly when so many others were willing to be named. *Michel*, 816 F.3d at 704. It is easy to understand—particularly when Moore is suing those who came forward by name—why one might be reluctant to accuse a powerful national figure of inappropriate sexual conduct toward teenagers.

Compl. Ex. B ("Five other current and former Etowah County residents also spoke to *AL.com* with similar accounts."); Ex. 2 (citing additional sources).[9] Having "reasonably relied" on "a multitude of previous reports," those involved with the TV Ad could not have entertained serious doubts about these statements' veracity. *Rosanova*, 580 F.2d at 862.

Put simply, "there is no indication" that the statements quoted verbatim in the TV Ad were "fabricated by the defendants, wholly imaginary, based on an unverified anonymous phone call, inherently improbable, or obviously worthy of doubt." *Michel*, 816 F.3d at 705. When weighed against the sheer number of sources discussed in these articles and the stark similarity of their accounts, the fact that one former manager who started years after the alleged banning told the *New Yorker* he could not recall Moore being on an official "ban" list, and that one of Moore's friends disputed the existence of such a ban, does not support an inference that any Defendant "actually entertained a serious doubt as to the truth" of these assertions. *Smith*, 888 So. 2d at 502. Allowing a defamation claim to proceed under these facts would force those with information about candidates to engage in precisely the self-censorship the actual-malice standard is meant to prevent. It would be intolerable if

---

[9] The Court should decline Moore's baffling invitation to split hairs by concluding that, in pursuing teenage girls while in his thirties, Moore was not "soliciting sex." Compl. ¶¶ 16-17. As just explained, at the time the TV Ad was aired, there were credible accusations that, while in his thirties, Moore sexually molested teenage girls. Surely that was among the worst fears of those who apparently banned Moore from the mall due to his "flirting and dating" teenage girls. *Id.* ¶ 17.

those engaged in political activity could not accurately recount unfavorable media reports about a political opponent for fear of a defamation lawsuit. To protect the "breathing space needed to ensure robust reporting on public figures and events," *Michel*, 816 F.3d at 702, courts have dismissed defamation claims under similar facts. *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 82, 85 (D.D.C. 2019) (dismissing claim over statements that U.S. Senate candidate "conduct[ed] racial profiling on a mass scale," "terroriz[ed] immigrant neighborhoods," and oversaw "humiliating" and "lethal" jails where one inmate was "left battered on the floor to die" because "publicly reported news events . . . underpinning [such] claims" made "ample reason to reject" assertion of actual malice); *Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1161 (S.D. Fla. 2018) (rejecting claim over statement that plaintiff dealt arms because accusations were "already the subject of widespread media reports").

The fact that Moore denied these accusations does not help his claim. As a matter of law, a defendant's awareness of self-serving denials does not support, let alone create, an inference of the "serious doubt" necessary to demonstrate actual malice. *Smith*, 888 So. 2d at 501 (rejecting as evidence of actual malice a denial by spokesperson for plaintiff's department); *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("[S]uch denials are so commonplace . . . that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.").

Similarly, Moore's assertion that Defendants were obligated to make

themselves aware of a different interview with Boyle and a self-serving press release by Moore's campaign, Compl. ¶¶ 26-29, ignores well-established law. "[A] failure to investigate, standing on its own, does not indicate the presence of actual malice." *Michel*, 816 F.3d at 703. The TV Ad's citations to the *New American Journal*, *AL.com*, and *New Yorker* articles demonstrate that those involved with the TV Ad were aware of the articles' contents, in which an overwhelming number of sources stated that Moore pursued teenage girls, two of which he sexually assaulted, and he was banned from the Gadsden Mall due to this behavior. The actual-malice standard did not require them to investigate these matters any further.

For these same reasons, the remaining quotations in the TV Ad—that (1) Moore approached a 14-year-old girl working as Santa's helper, (2) rumors about Moore's conduct with teenage girls had been "going around [Gadsden] for 30 years," (3) Moore's accusers had been "skewered for the truth," and (4) the Gadsden police officer who previously voted for Moore was "basically disgusted now," Compl. ¶ 13—also lack any suggestion of actual malice. The numerous sources who corroborated these assertions, and the absence of anything in the three articles quoted in the TV Ad suggesting any reason to disbelieve them, preclude actual malice.[10]

---

[10] Moore's allegation that those quoted in the TV Ad did not actually "know" him cannot give rise to a defamation claim. Even if the assertion that these individuals knew Moore was false, it is not defamatory. *Butler v. Town of Argo*, 871 So. 2d 1, 19 (Ala. 2003) (defining a defamatory statement as one that "tends to bring an individual into public hatred, contempt or ridicule or charges an act odious and disgraceful in society").

In sum, aside from bald, conclusory assertions of actual malice, Moore's allegations regarding the TV Ad not only fail to state a claim of defamation, they demonstrate that those involved with the TV Ad neither knew of any supposed falsity of any statement nor recklessly disregarded the risk of such supposed falsity. By "ple[ading him]self out of court," Moore has demonstrated that any effort to amend his pleadings would be futile. *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-2902-CLS, 2012 WL 5511039, at *6-7 (N.D. Ala. Nov. 9, 2012).

### b.   The Complaint fails to allege actual malice with respect to the Online Ad.

For the same essential reasons, Moore's allegation that Defendants defamed him when Highway 31 published the Online Ad also fails. To the extent Moore claims the Online Ad's use of the term "child predator" defamed him, his allegations do not support an inference of actual malice. As discussed above, the Complaint and its incorporated materials demonstrate that by the time the Online Ad was published, there were multiple, credible allegations that Moore had made sexual advances towards, and had sexually assaulted, teenage girls. *See supra* Section III.B(1)(a).

Moore's apparent belief that someone who sexually assaults teenage girls while in his thirties should not be called a "child predator," *see* Compl. ¶ 32, does not support an assertion of actual malice. He alleges nothing suggesting that the use of that term implied facts that those involved with the Online Ad knew not to be true. Indeed, his allegations prove the opposite: according to Moore, the term "child

predator" references an individual's "sexual victimization of children." Compl. ¶ 32. As explained above, those involved with the Online Ad had more than a reasonable basis to believe Moore had sexually assaulted at least two teenage girls. While Moore may believe that conduct does not amount to "sexual victimization of children," he alleges no *facts* suggesting anyone else would agree with him. *See Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1271-74, 1278-80 (M.D. Ala. 2019) (dismissing defamation claim for failure "to plead any facts to support [plaintiff's assertion] about the commonly understood meaning of 'hate group'" or that defendant knew others would agree with that asserted meaning).

As Moore admits, Compl. ¶ 33, the remainder of the Online Ad has nothing to do with him. Instead, it concerns whether an individual's voting record is publicly accessible. *Id.* ¶ 31. Because that issue does not "concern the plaintiff" here, it cannot serve as the basis for a defamation claim. *Wal-Mart Stores*, 872 So. 2d at 840; *see Lloyd v. Cmty. Hosp. of Andalusia, Inc.*, 421 So. 2d 112, 112-13 (Ala. 1982) (explaining if statement at issue does not concern plaintiff, no defamation results).

Moore's pleadings demonstrate that those involved with the Online Ad had a reasonable basis to believe Moore had a history of inappropriate sexual contact with minors. In their reasonable opinion, this conduct made him a child predator. Because that reality prevents Moore from asserting a defamation claim, any effort to amend

is futile.

             **c.**      **The Complaint fails to allege actual malice with respect to Cecil's statements.**

Moore similarly fails to plead facts permitting an inference that Cecil's statements were made with actual malice. As explained, Moore's allegations show that by the time Cecil made the statements cited in the Complaint, several well-sourced articles had published reports of Moore's sexual misconduct with minors. *See, e.g.*, Compl. ¶¶ 13, 20; *see also supra* note 3. Nothing in the Complaint suggests Cecil did anything other than rely on the deluge of allegations by multiple victims—whose statements had been published by scores of national news outlets—that had been corroborated by many others who lived in the Gadsden area. *Rosanova*, 580 F.2d at 862. That Cecil clearly believed the women who bravely came forward precludes a finding of actual malice. Thus, Moore cannot allege that Cecil "actually entertained a serious doubt" as to the allegations against Moore by his various accusers. *Smith*, 888 So. 2d at 499-500.

Moore's conclusory assertion that Cecil "had to have entertained doubts as to the[] truthfulness" of the accusations against Moore because Cecil "had no way of verifying their truth or falsity," Compl. ¶ 60, turns actual malice on its head. This position would produce the absurd result that a speaker who repeats the statements of an accuser—or, as here, upward of five accusers—against a public figure acts with actual malice unless she first launches and concludes her *own* investigation. As

- 24 -

already explained, the law states the exact opposite. *Michel*, 816 F.3d at 704.

> ### d.   Moore is a libel-proof plaintiff and cannot fairly trace any injury to Defendants.

Even had Moore alleged actual malice, which he has not, his claims still fail because, by the time the statements at issue were made, Moore was already "libel-proof" as to his reputation regarding his improper conduct with teenage girls.

"The libel-proof plaintiff doctrine reasons that when a particular plaintiff's reputation for a particular trait is sufficiently bad, further statements regarding that trait, even if false and made with malice, are not actionable because, as a matter of law, the plaintiff cannot be damaged in his reputation as to that trait." *Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 593 (S.D.N.Y. 1996). Because a libel-proof plaintiff "is, as a matter of law, so unlikely to recover anything other than nominal damages," the "First and Fourteenth Amendments of the United States Constitution prohibit the burden on a defendant of a trial in which the most favorable result such a plaintiff could achieve would be an award of nominal damages." *Cofield v. Advertiser Co.*, 486 So. 2d 434, 435 (Ala. 1986).

The statements Moore attributes to Defendants could not have defamed him because Moore's own pleadings confirm that by the time the statements were made, Moore's misconduct was already well known. He does not dispute the statement in the *AL.com* article—attached to his Complaint—that rumors of his inappropriate conduct with teenage girls "have been going around [Gadsden] for 30 years." Compl.

Ex. B. In that event, statements in 2017 about this behavior would not have affected his reputation. Moreover, allegations that Moore had sexually assaulted teenage girls had been widely reported by the news media as early as November 9, 2017—weeks before any of the statements at issue in this case were published. *See supra* note 3; Exs. 1, 2; Compl. Ex. B. Because Moore's reputation regarding misconduct with teenagers was at rock bottom by the time the statements at issue were made, they could not have caused him reputational harm.

"[D]efamation is not about compensating for damage done to a false reputation by the publication of hidden facts[,] [i]t's about protecting a good reputation honestly earned." *Bustos v. A&E Television Networks*, 646 F.3d 762, 764 (10th Cir. 2011). Because Moore's "good reputation" was long gone by the time the purportedly defamatory statements were published, Moore is libel-proof and cannot proceed in his defamation claim. *Cofield*, 486 So. 2d at 435.

### 2.    Even if defamation-by-implication exists under Alabama law, Moore fails to plead the requisite actual malice.

It is far from clear that defamation-by-implication is a cognizable cause of action under Alabama law. The Alabama Supreme Court has suggested that it is not an *independent* cause of action, but rather mere context in a defamation claim. *Myers v. Mobile Press-Register, Inc.*, 97 So. 2d 819, 823 (Ala. 1957) ("If the matters going before the innuendo do not constitute libel or slander, no words contained in the innuendo can make the language used actionable, for it is not the nature or purpose

of an innuendo to state the cause of action." (citation omitted)). But even if such a claim exists, Moore's allegations fail to satisfy such claim's elements. "When a public official or public figure alleges a defamatory . . . implication," he must not only prove "that the statement is susceptible of a defamatory meaning which the defendants knew to be false or which the defendants published with reckless disregard for its potential falsity, but also that the defendants intended to imply or were reckless toward the implications." *Finebaum v. Coulter*, 854 So. 2d 1120, 1124-25 (Ala. 2003) (quoting *Saenz v. Playboy Enters., Inc.*, 841 F.2d 1309, 1318-19 (7th Cir. 1988)). In other words, Moore would have to plead facts permitting an inference of actual malice regarding (1) the implication of a statement that is defamatory, and (2) the falsity of that implication. He has not, and cannot, do so.

Moore's claim that the quotations in the TV Ad improperly "implied" support for the first quotation regarding his being banned from the Gadsden Mall suggests neither type of actual malice. Nothing about the TV Ad suggests that the first quotation is a "topic sentence." Compl. ¶ 13. Each quotation is included in separate frames, in equally sized font, and with its separate, respective citation provided underneath. While Moore might believe the TV Ad is misleading, he offers no allegations showing that actual malice underscored any implication he sees. Moreover, even if the quotations that followed the first could be considered to "imply" support for the assertion that Moore was banned from the mall, as already

explained, *see supra* Section III.B(1)(a), Moore has not alleged that those involved with this ad knew, or had recklessly disregarded the risk, that this assertion was false: when the TV Ad aired, there were many reasons to believe that Moore had been banned from the mall due to his misconduct with teenage girls.

### 3.   Moore fails to state a claim for IIED.

Moore's claim for IIED fails for three reasons. First, he has not pled, and cannot plead, the requisite actual malice. Second, his allegations do not meet Alabama's "objective indicia" standard for emotional distress. Third, it would be impossible to trace any distress to the statements cited in the Complaint, as opposed to the flurry of other contemporaneous statements regarding Moore's misconduct.

IIED is an "extremely limited cause of action." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). Moore must allege conduct that was (1) "intentional or reckless" and (2) "extreme and outrageous," and that (3) "caused emotional distress so severe that no reasonable person could be expected to endure it." *Id.* As a public figure claiming IIED based on allegedly false statements, Moore must also allege Defendants acted with the same actual malice that is required to assert defamation. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988).

First, Moore's IIED claim fails because he has not plausibly pled actual malice with respect to the falsity of any allegedly defamatory statements. "[P]ublic figures . . . may not recover for the tort of [IIED] by reason of

publications . . . without showing in addition that the publication contains a false statement of fact which was made with 'actual malice,' *i.e.*, with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Hustler Magazine*, 485 U.S. at 56. Because Moore's defamation claims fail for lack of actual malice, *supra* Section III.B(1), his IIED claim fails as well.

Next, Moore does not allege the "objective indicia" of distress that he himself held—while serving as Chief Justice of the Alabama Supreme Court—is essential to an IIED claim. In *Guyoungtech USA, Inc. v. Dees*, for example, Moore held a plaintiff asserting mental suffering must offer objective evidence of emotional harm, and damages were not appropriate when a plaintiff merely "expressed concern for the stability of her marriage as evidence of her mental anguish." 156 So. 3d 374, 381 (Ala. 2014); *see also Grantham v. Vanderzyl*, 802 So. 2d 1077, 1081 (Ala. 2001) ("Generalized apprehensions and fears do not rise to the level of the extreme, severe emotional distress required to support a[n IIED] claim."). Here, Moore offers only conclusory allegations that he has suffered "mental anguish and severe psychological and emotional distress." Compl. ¶ 69. Despite holding other litigants to this standard, Moore alleges no facts suggesting objective indicia of his distress.

Finally, Moore cannot establish that any emotional distress was proximately caused by the statements at issue in this suit, as opposed to any other media outlet or political actor that amplified or repeated the numerous allegations against him. *See*

*supra* Section III.B(1)(d). "Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause." *Ex parte Mobile Power & Light Co.*, 810 So. 2d 756, 759-60 (Ala. 2001) (quoting *Ex parte Diversey Corp.*, 742 So. 2d 1250, 1254 (Ala. 1999)). Causation is far too attenuated here to impose civil liability on Defendants. Like his other claims, these defects are fundamental and cannot be overcome by an amended pleading or discovery.

## IV.   Conclusion

Beyond the fact that this Court cannot assert personal jurisdiction over Cecil, Moore has not pled facts making it plausible that he can satisfy the elements of his claims. Indeed, because Moore's allegations prove he cannot satisfy such elements, any attempt to amend would be futile. The Court should dismiss these claims with prejudice.

Allowing Moore to amend his plainly meritless claims would encourage candidates to use defamation suits as a tool to intimidate critics and chill scrutiny of their record and conduct. That risk is particularly heightened where Moore has launched this suit against political opponents in conjunction with his renewed bid for the Senate. Moore should not be allowed to use the legal process for such ends.

Filed: January 13, 2019

Respectfully submitted,

/s/ *Marc E. Elias*
Marc E. Elias (admitted *pro hac vice*)
**Perkins Coie LLP**
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Tel.: (202) 654-6200
Fax: (202) 654-9106
MElias@perkinscoie.com

Barry A. Ragsdale (RAG003)
Meghan S. Cole (SAL035)
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Birmingham, AL 35205
Tel.: (205) 930-5100
Fax: (205) 930-5101
bragsdale@sirote.com
mcole@sirote.com

William B. Stafford (admitted *pro hac vice*)
**Perkins Coie LLP**
1201 Third Ave., Suite 4900
Seattle, WA 98101-3099
Tel.: (206) 359-8000
Fax: (206) 359-9000
WStafford@perkinscoie.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2020, I filed a copy of the foregoing Defendants' Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


Melissa L. Isaak
The Isaak Law Firm
2815B Zelda Road
Montgomery, AL 36106

Larry E. Klayman
7050 W. Palmetto Park Rd., #15-287
Boca Raton, FL 33433


/s/ Marc E. Elias
Marc E. Elias