# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| ROY S. MOORE,<br><br>            Plaintiff,<br><br>     v.<br><br>GUY CECIL; PRIORITIES USA; SENATE MAJORITY PAC (SMP); BULLY PULPIT INTERACTIVE LLC; and WATERFRONT STRATEGIES,<br><br>            Defendants. | Civil Action<br><br>Case No. 4:19-cv-01855-CLM |

## DEFENDANTS' REPLY IN SUPPORT OF
## <u>MOTION TO DISMISS</u>

## TABLE OF CONTENTS

Page

I. Defendant Cecil is not subject to personal jurisdiction in Alabama ..............2

II. Moore's allegations confirm the absence of actual malice ...........................3

    A. The TV Ad..................................................................................................4

    B. The Online Ad and Cecil's Statements ..................................................8

    C. Moore is libel proof with respect to his reputation regarding misconduct with teenage girls ..............................................................9

III. Moore has abandoned his IIED claim ..........................................................10

IV. Conclusion ......................................................................................................10

Roy Moore appears to believe that seeking romantic relationships with teenage girls made him a gentleman. Defendants believe that kind of conduct—particularly in light of accusations that he sexually assaulted such girls—made him a child predator, and that voters had the right to consider these reports about Moore's conduct prior to the 2017 special election. Inconsistent with his present allegations that the political advertisements at issue supposedly harmed his reputation, Moore waited two years to file this lawsuit, until shortly before the limitations period ran and *after* he decided to run again for the U.S. Senate.

Now that he has, Moore responds to Defendants' motion by offering distinctions that make no difference and irrelevant authority, but no meaningful response to Defendants' arguments. As to personal jurisdiction over Defendant Cecil, Moore's Complaint does not allege that Cecil was *personally* involved with the creation of the Online Ad, and Moore offers no response to Defendants' argument that Cecil's statements did not target Alabama. On the merits, Moore's quibbles over the language of the TV Ad misses the forest for the trees. The TV Ad's introduction made clear that it was referencing *words spoken by others*. More importantly, as to all the statements at issue, the prior existence of materially unchallenged accusations that Moore sexually assaulted teenage girls render implausible Moore's speculative allegations that Defendants harbored serious doubts or acted recklessly. Moore thus has not made plausible allegations of actual

malice, an essential element to each of his claims. Likewise, Moore fails to rebut Defendants' point that these statements could not have harmed his reputation regarding improprieties with teenage girls because they were known to Gadsden residents for decades and were already reported throughout national media. Finally, Moore has abandoned his IIED claim by failing to respond to Defendants' arguments that his allegations fail to satisfy the elements of causation or emotional distress.

## I.     Defendant Cecil is not subject to personal jurisdiction in Alabama.

At the outset, Moore's allegations do not permit this Court to assert personal jurisdiction over Cecil in a manner consistent with due process. The Complaint alleges no facts connecting Cecil's personal conduct with the factual bases of Moore's claims against Defendant Priorities USA, i.e., creation of the Online Ad. Moore instead asks the Court to make an inference of Cecil's personal involvement in the Online Ad based on two allegations. First, after the conclusion of the election, Cecil congratulated Priorities USA on a successful digital campaign. Pl.'s Opp., ECF No. 32, at 22. But nothing in the statement suggests *his own involvement* in a way that would give rise to personal jurisdiction; Moore's claim to the contrary is purely speculative. Second, Moore alleges that, as Chairman of Priorities, Cecil makes decisions regarding the organization's funding. *Id.* Even if true, that does not mean Cecil had any involvement in creating the Online Ad. If that fact alone could create an inference of Cecil's personal involvement, personal jurisdiction would attach

automatically to Cecil for every single act Priorities takes, a result the Supreme Court has expressly eschewed. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

Nor can any statements attributed to Cecil in the Complaint give rise to specific jurisdiction. By claiming the Court can exercise jurisdiction over Cecil because these statements targeted *Moore*, *see* Pl.'s Opp. at 22 (relying on *Licciardello v. Lovelady*, 544 F.3d 1280, 1287 (11th Cir. 2008)), former Chief Justice Moore simply gets the law wrong. After the Eleventh Circuit decided *Licciardello*, the Supreme Court clarified that the specific-jurisdiction analysis "looks to the defendant's contact with the *forum State* itself, *not* the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphases added). Thus, the relevant question is not whether, in making these statements, Cecil targeted Moore, but instead whether Cecil targeted *Alabama*. As Defendants have explained, *see* Mot. to Dismiss, ECF No. 25, at 11-14, the statements attributed to Cecil were made to a national audience. As such, these statements in no way "targeted" Alabama. Moore has offered no response to this argument. *See* Pl.'s Opp. at 22-23.

## II. Moore's allegations confirm the absence of actual malice.

While Defendants maintain that the contents of the statements at issue are true, contrary to what Moore suggests, *see* Pl.'s Opp. at 5-6, that is not the issue before

- 3 -

the Court. Moore's Complaint pleads falsity, and so for purposes of this motion, the question is whether his assertions of actual malice are plausible. They are not.

### A.   The TV Ad

Moore's response to Defendants' motion asks the Court to ignore the TV Ad's plain language and to infer actual malice without any relevant factual basis.

Moore claims the Court can infer actual malice because the TV Ad supposedly "altered" its quotation of the *New American Journal* article to portray the statement as "unqualified assertion of fact." Pl.'s Opp. at 9. But this cannot be squared with the TV Ad's plain language. The very first sentence of the TV Ad made abundantly clear that the five quotations that were to follow were things people had "sa[id]" about Roy Moore. Compl. ¶ 13. Removing the words "sources tell me" from the beginning of the *New American Journal* quotation simply avoided redundancy. The meaning was the same: people in Gadsden had said that Moore was banned from the mall for soliciting sex from teenage girls.

Nothing in the Complaint and the documents it references offers any reason to believe Defendants had "serious doubts" that this assertion was true or were reckless with respect to its potential falsity. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016); *see* Mot. at 17-22. In addition to this statement in the *New American Journal*, the *New Yorker* author spoke with "more than a dozen people," and the *AL.com* author spoke with "[f]ive other current and former Etowah County

- 4 -

residents," all who provided corroboration. Mot. Ex. 1 at 3; Compl. Ex. B.

Moore's insistence that these statements were only "rumor and hearsay," Pl.'s Opp. at 10, offer him no support. The law does not require speakers to conduct an independent, comprehensive fact check of media accounts before speaking about a public figure, because that position would chill the public's right to speak. To the contrary, the relevant inquiry is whether Defendants "actually entertained serious doubts as to the veracity" of the fact that people said that Moore was banned from the mall, or were "highly aware" that said fact "was probably false." *Michel*, 816 F.3d at 703. Given the number of individuals who corroborated this claim, Moore has not plausibly alleged that Defendants harbored any such doubts or were highly aware that this claim might be false.

Moore next attempts to distract the Court with semantic differences between news articles. To that end, he notes that the *New Yorker* and *AL.com* authors referred to Moore being banned from the mall for "badgering," "flirting with," and "dating" teenage girls, as opposed to the *New American Journal*'s statement that Moore was banned for "soliciting sex." Pl.'s Opp. at 10-12. In doing so, he ignores that by the time the TV Ad was published, multiple women had accused Moore of sexually assaulting them when they were teenage girls. Mot. Ex. 1 at 2. Thus, before the TV Ad ran, its creators knew that multiple women had accused Moore of soliciting sex from them when they were teenage girls *and* that many people said that Moore had

been banned from the mall because of his improper conduct around such girls. Moore alleges no facts that would have caused the creators of the TV Ad to question the assault accusations against him—let alone seriously doubt them—aside from his personal denials, which, as Defendants have already explained, Mot. at 20, do not permit an inference of actual malice. The sexual-assault accusations against Moore lent further support to the assertion that, in flirting with, dating, and badgering teenage girls, Moore was not seeking platonic companionship, but rather, sex. And the fear that Moore would take sexual advantage of the teenage girls he tried to pick up at the Gadsden mall was precisely why those at the mall wanted him to stay away.

Similarly, Moore's insistence that some of the articles' sources indicated he was "run off" by mall workers—as opposed to being placed on some sort of official ban list—offers a distinction without a difference. The bottom line is that the TV Ad cited reports that those at the mall found Moore to be a threat to teenage girls and took action to prevent Moore from further pursuing teenage girls on mall property. Moreover, Moore's assertion that the *New American Journal* "retracted" its statement about Moore being kept away from the mall, Pl.'s Opp. at 11, is not true. In the follow-up article Moore cites, the author explained that Moore "was 'run off' by store managers and mall security officers first from the Pizitz store in the mall, for spending hours fondling the female lingerie and hitting on store employees," and "was 'run off' from the mall itself on numerous occasions, also for being 'creepy'

- 6 -

and harassing teenaged girls and female employees." Ex. 1.[1] The "sting" of the ad is no different if Moore was "run off" from a mall repeatedly or "banned."

The same conclusion applies to the remaining quotations in the TV Ad. The ad accurately quoted the *AL.com* author's statement that Moore approached Wendy Miller at the Gadsden mall when she "was 14 and working as Santa's helper," told her she looked pretty, and later tried to date her. Compl. Ex. B. The TV Ad did not say that Moore solicited sex from Miller. But even if it did, as already explained, the creators of the TV Ad had plenty reason to believe that in approaching Miller when she was 14, Moore *was* seeking sex: the multiple sexual-assault accusations made against Moore prior to the TV Ad's publication gave significant reason to believe Moore exhibited a pattern of picking up teenage girls from public locations and trying to have sex with them. According to Leigh Corfman, that was precisely what Moore did when she was 14 years old. Mot. Ex. 1 at 2.

The same applies to the remaining quotations, including the accurate quotation of Blake Usry's statement in *AL.com* that "[t]hese stories have been going around this town for 30 years." Compl. Ex. B. In that article, Usry explained that Gadsden residents' familiarity with stories about Moore's misconduct made it "'frustrating to watch' the public disbelieve the women who ha[d] come forward"

---

[1] As with the other articles cited in the Complaint, the Court may take judicial notice of this article's contents. *See* Mot. at 3 n.2; Compl. ¶ 29 (referencing this article).

and accused Moore of trying to have sex with them when they were teenage girls. *Id.* The quotation of Teresa Jones' statement that "these women are being skewered for the truth" was a reference to those who accused Moore of sexually assaulting them when they were teenagers. *Id.* And despite Moore's attempts to twist the words of the police officer who said he was "disgusted" by Moore, the officer was referring to the facts he had learned about Moore, including that a friend of his told him about Moore getting banned from the mall. Mot. Ex. 1.

Moore's attempts to nitpick the TV Ad cannot overcome the fact that before it was aired, multiple women accused him of sexually assaulting them when they were teens, and more than twenty area residents corroborated the assertion that mall officials sought to keep Moore away due to his inappropriate behavior towards teenage girls. These facts not only fail to make Moore's assertion of actual malice plausible; they disprove it.

### B. The Online Ad and Cecil's Statements

The claims relating to the Online Ad and statements attributed to Cecil fail for the same reasons. At the time these statements were made, the public discourse was flush with the accusations that Moore had sexually assaulted and molested teenage girls, and Moore alleges no facts that call those accusations into question.

Moore's assertion that Defendants were somehow obligated to present these statements as "allegations," *see* Pl.'s Opp. at 23, has absolutely no basis in law.

Because the actual malice standard is subjective, *Michel*, 816 F.3d at 702-03, what matters is not whether Defendants properly qualified their statements, but instead whether Defendants actually thought their statements might not be true. Again, Moore has not alleged facts suggesting Defendants believed Moore might not have, in fact, sexually assaulted teenage girls. No principle of law requires a person commenting on a public figure accused of sexual assault to believe the accused and disbelieve the accuser.

Similarly, Moore's citation to the portion of the opinion in *Michel* in which the court analyzes the distinction between assertions of opinion and assertions of fact, *see* Pl.'s Opp. at 23, is inapposite. Moore has failed to allege any facts indicating that neither the creators of the Online Ad nor Cecil had doubts about the truth of the statements attributed to them. As already explained, *see* Mot. at 22-23, by calling Moore a child predator and a pedophile, these individuals asserted Moore had sexually assaulted teenage girls, and they believed the terms used to summarize that conduct were appropriate. Because the Complaint offers no facts plausibly establishing that Defendants harbored serious doubts about whether Moore had sexually assaulted teenage girls, he has not adequately alleged actual malice.

### C. Moore is libel proof with respect to his reputation regarding misconduct with teenage girls.

Moore does not dispute that, by the time the statements at issue were made, he had a sordid reputation for misbehaving around teenage girls. As the details of

- 9 -

his own Complaint indicate, stories about Moore's misbehavior around young girls had "been going around [] town for 30 years." Compl. Ex. B. And by the time the statements were made, the entire nation was aware of this reputation. *See* Mot. at 6 n.3. At that point, further statements about Moore's misbehavior—particularly those relaying others' prior statements—were so unlikely to cause any detriment to his dismal reputation that he cannot "recover anything other than nominal damages." *Cofield v. Advertiser Co.*, 486 So. 2d 434, 435 (Ala. 1986). Accordingly, this case presents the exceptional circumstance in which the libel-proof doctrine should apply.

### III.   Moore has abandoned his IIED claim.

Moore's utter failure to respond to Defendants' arguments that Moore has not pled facts suggesting the necessary objective indicia of emotional distress or that Defendants proximately caused any alleged emotional distress, *see* Mot. at 29-30, amount to an abandonment of his IIED claim. *Evans v. Jefferson Cty. Comm'n*, No. CV-11-VE-2131-S, 2012 WL 1745610, at *11 (N.D. Ala. May 15, 2012) (explaining that plaintiff's failure to respond to arguments in motion to dismiss "constitutes abandonment of that claim"). Moore provides no explanation for why he did not even attempt to plead basic elements of this cause of action and thus gives the Court no reason to give him another bite at the apple.

### IV.   Conclusion

The Court should dismiss Moore's Complaint with prejudice.

Filed: February 20, 2020

Barry A. Ragsdale (RAG003)
Meghan S. Cole (SAL035)
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Birmingham, AL 35205
Tel.: (205) 930-5100
Fax: (205) 930-5101
bragsdale@sirote.com
mcole@sirote.com

Respectfully submitted,

/s/ *Marc E. Elias*
Marc E. Elias (admitted *pro hac vice*)
**Perkins Coie LLP**
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Tel.: (202) 654-6200
Fax: (202) 654-9106
MElias@perkinscoie.com

William B. Stafford (admitted *pro hac vice*)
**Perkins Coie LLP**
1201 Third Ave., Suite 4900
Seattle, WA 98101-3099
Tel.: (206) 359-8000
Fax: (206) 359-9000
WStafford@perkinscoie.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2020, I filed a copy of the foregoing Defendants' Reply in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Melissa L. Isaak
The Isaak Law Firm
2815B Zelda Road
Montgomery, AL 36106

Larry E. Klayman
7050 W. Palmetto Park Rd., #15-287
Boca Raton, FL 33433

                                                  */s/ Marc E. Elias*
                                                  Marc E. Elias