FILED
2022 May-31  AM 08:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**ROY S. MOORE,**
     **Plaintiff,**

**v.**

**SENATE MAJORITY PAC,**
*et al.*,

     **Defendants.**

**Case No. 4:19-cv-1855-CLM**

## MEMORANDUM OPINION

Roy Moore sued the Senate Majority Pac ("SMP") and Waterfront Strategies ("Waterfront") (collectively, "the Defendants") (Doc. 47). Discovery has ended, and the Defendants have moved for summary judgment on Moore's remaining claims. (Doc. 135). As explained within, the court will **DENY** the Defendants' motion for summary judgment.

Moore also moved to strike the Defendants' expert report. (Doc. 95). The court will **DENY** this motion **as MOOT**.

## BACKGROUND

Jeff Sessions vacated his seat as United States Senator to serve as the Attorney General of the United States. Moore won a run-off election to become the Republican nominee for the vacant seat in September 2017. Moore squared off against Democratic nominee Doug Jones in December.

This case centers on events that happened in the weeks just before that December 2017 election.

1

**A. The Allegations**

On November 9, 2017, *The Washington Post* published an article about four women who alleged that Moore sought relationships with them when he was in his 30s and they were in their teens. (Doc. 136-1). Relevant here, the article stated, "Wendy Miller says she was 14 and working as a Santa's helper at the Gadsden Mall when Moore first approached her, and 16 when he asked her on dates, which her mother forbade." (*Id.* at 1).

On November 12, 2017, the *New American Journal* published an article by Glynn Wilson that alleged, "Sources tell me Moore was actually banned from the Gadsden Mall and the YMCA for his inappropriate behavior of soliciting sex from young girls."[1] (Doc. 136-3, p. 2). On November 13, 2017, *The New Yorker* published an article by Charles Bethea that repeated Wilson's statement. *The New Yorker* article also stated that Bethea had spoken to "more than a dozen people—including a major political figure in the state—who told [Bethea] that they had heard, over the years, that Moore had been banned from the mall because he repeatedly badgered teen-age girls." (Doc. 136-4, p. 2). *The New Yorker* article also stated that Greg Legat thought the ban "started around 1979." (*Id.* at 3). On November 13, 2017, AL.com also published an article that stated, "Wendy Miller told *The Post* that she was 14 and working as a Santa's helper at the Gadsden Mall in 1977 when Moore first spoke with her and told her she looked pretty. Two years later, when she was 16, he asked her out on dates, although her mother wouldn't let her go." (Doc. 47-1, p. 7) (italics added).

Over the next few weeks, various news agencies circulated these allegations: (1) allegations that Moore sexually harassed or assaulted several more women when they were teenagers; and (2) allegations that Moore was banned from the Gadsden Mall because he sexually harassed

---

[1] On November 27, 2018, Wilson published another article, stating that the use of the word "ban" might have been too strong, and clarifying that it may have been more precise to say that Moore "was 'run off' by store managers and mall security officers." (Doc. 138, p. 26) (quoting *Moore v. Lowe*, 2022 WL 759525, at *16 and n.27 (N.D. Ala. Mar. 11, 2022). But the original allegation was already circulating in the news.

or solicited sex from young girls. (Docs. 136-3 through 136-26; doc. 141-3 at 60). For example, *The New York Times* published an article that read, "An article in *The New Yorker* asserted that Mr. Moore had been barred from the mall in his hometown, Gadsden, for bothering young women, a memory that many in the town said they shared, though no one has found direct evidence." (Doc. 136-5).

## B. The Defendants' statements

Defendant SMP—a federally registered political action committee that supported Moore's opponent, Doug Jones—helped create a television advertisement that quoted previously reported allegations ("the shopping mall ad"). (Doc. 138, p. 14–15). The parties disagree about Defendant Waterfront's involvement in creating the content or publishing the shopping mall ad. (*See id.* at 15; doc. 143, pp. 10–11).

The shopping mall ad ran during the final weeks of the campaign. Relevant here, the shopping mall ad juxtaposed these quotes:

- "Moore was actually banned from the Gadsden Mall . . . for soliciting sex from young girls."
  –New American Journal, 11/12/2017

- "One he approached 'was 14 and working as Santa's helper.'"
  –AL.com, 11/13/2017

Moore lost the Senate race.

## C. Remaining claims

Only two claims remain: Moore's claims for defamation and invasion of privacy–false light. Both claims relate to the juxtaposition of the two quotes above. And the Defendants argue that both claims should be dismissed under Rule 56.

## STANDARD OF REVIEW

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### I.   The Motion for Summary Judgment (doc. 135)

The Defendants ask the court to dismiss Moore's claims for two reasons. The court addresses each argument in turn.

### A. The court will not dismiss Waterfront as a Defendant.

Waterfront argues that the court should dismiss all claims against it because Waterfront did not create or publish the shopping mall ad. (Doc. 135, p. 1). Waterfront says that its "only involvement with the [ad] was negotiating prices with television stations." (Doc. 148 ¶ 33).

Moore counters by pointing to this question and answer from the deposition of Waterfront President Bill Brocato:

> Q: Waterfront Strategies, GMMB, and SMP were all working together with regard to this – the publication of the shopping mall ad, which is Exhibit 4, correct?
>
> A: Yes. Waterfront Strategies worked with SMP to air this ad.

(Doc. 141-4, p. 11). Moore also notes that Brocato could not confirm whether Waterfront employees were involved in confirming the accuracy of the statement that Moore was "banned from the Gadsden Mall . . . for

soliciting sex from young girls." (*Id.* at 10).

Viewing the evidence in the light most favorable to Moore, the court finds that there is a genuine dispute of material fact about Waterfront's involvement in creating or publishing the shopping mall advertisement. So the court will not dismiss Moore's claims against Waterfront.

### B. Whether the Defendants had actual malice is a question of fact for the jury.

To succeed on his claims, Moore must prove by clear and convincing evidence that the Defendants created or published the shopping mall ad with either: (1) knowledge that the statements were false; or (2) reckless disregard for whether the statements were false. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Anderson*, 477 U.S. at 255. The Defendants argue that Moore cannot prove actual malice by clear and convincing evidence. (Doc. 135, p. 1).

First, Waterfront argues that Moore cannot prove that it acted with actual malice because Waterfront was not involved in creating the shopping mall advertisement and did not make any statements in the shopping mall advertisement. (Doc. 138, p. 17). For the reasons stated above, there is a genuine dispute of material fact about the extent of Waterfront's involvement. So the court will not dismiss Moore's claims against Waterfront based on this argument.

Next, the Defendants argue that the court should grant summary judgment because the statements in the shopping mall advertisement— when read separately—are true: (1) the Defendants had a right to rely on widespread reporting that Moore was banned from the Gadsden Mall for soliciting sex from young girls; and (2) Moore himself did not deny that he approached Wendy Miller when she was 14 years old and working as a Santa's helper. The Defendants assert that "SMP did not intend for the TV Ad's second quote to state that Moore was—in the moment—soliciting sex from Wendy Miller when he approached her at the mall[, but instead] intended to suggest that people had said that Moore approached Miller

when she was 14 and working as a Santa's helper." (Doc. 138, p. 16). Thus, the Defendants argue that the shopping mall ad was accurate and that SMP reasonably believed that it was accurate. Moore counters that, by juxtaposing the quotes as they did, the Defendants intended to "convey that the 14 year old Santa's Helper was 'one' of the 'young girls' that Moore was 'actually banned from the Gadsden Mall . . . for soliciting sex from.'" (Doc. 143, p. 12). The court finds that the Defendants' intent in placing these quotes back-to-back is a question of fact for the jury.

The Defendants next argue that, regardless of their intent, the implication that Moore solicited sex from Miller when she was 14 and working as a Santa's helper is not actionable because the "gist" or "sting" of the shopping mall ad is substantially the same as it would have been without the implication. (Doc. 138, p. 33–34). *See Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) ("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting" is justified. (citations removed)). But viewing the evidence in the light most favorable to Moore, the court finds that telling viewers that Moore was banned from the mall for soliciting sex from a 14-year-old Santa's Helper is more stinging than telling viewers that Moore complimented a 14-year-old girl on her appearance or telling them more generally that Moore was banned from the mall for soliciting young girls. The jury must decide whether the substance or sting of the juxtaposed ad was justified.

Next, the Defendants assert that they reasonably believed that Moore solicited sex from Wendy Miller when he approached her while she 14 years old and working as Santa's Helper. The Defendants say that "given the various reports about Moore engaging in unwanted sexual conduct toward young girls, when Moore approached Miller and told her she was pretty when she was 14, he was engaging in a process of soliciting her to begin a physical relationship." (Doc. 138, p. 17). But just like the Defendants' intent is a question of fact for the jury, the Defendants' belief about Moore's intent when he approached Miller is a question of fact for the jury to decide.

Finally, the Defendants argue that summary judgment is proper because multiple media sources had already reported that Moore engaged in a pattern of inappropriate sexual advances toward underage girls and that Moore had been formally or informally banned from the Gadsden Mall for this conduct. The Defendants rely on the Eleventh Circuit case, *Berisha v. Lawson*, which states that "reliance on []many independent sources, alone, should defeat any claim of actual malice." 973 F.3d 1304, 1313 (11th Cir. 2020).

The court has already rejected this argument. Yes, previous reports support a statement that authorities banned Moore from the mall, in part, because Moore solicited young girls. (*See* docs. 136-8 at 2, 136-4 at 2–4, 136-9 at 1, 136-11 at 1, 136-12 at 1, 136-15 at 1, 136-18 at 3, 147-1 at 2). That's why the court previously held that Moore cannot prove that the Defendants had actual malice in publishing the statement that "Moore was actually banned from the Gadsden Mall . . . for soliciting sex from young girls." *Moore v. Lowe*, 2022 WL 759525, at *16 (N.D. Ala. Mar. 11, 2022). But there was no prior report that Moore asked Wendy Miller for sex when she was 14 and working as Santa's helper at the Gadsden Mall— *i.e.,* the juxtaposed statement that the Defendants made. To the contrary, Miller told the *Washington Post* that when she was 14 and working as Santa's Helper, "Moore told her that she looked pretty," then when she was 16, "he began asking her out on dates in the presence of her mother at the photo both." (Doc. 136-1). Because the Defendants fail to point to another media source that previously said that Moore solicited sex from a 14-year-old working at the mall as Santa's Helper, this argument fails.

———

To sum up, the jury must decide intent and credibility. So Moore can proceed on his claims for defamation and invasion of privacy-false light based on his argument that the Defendants juxtaposed quotes to create the false and defamatory message that Moore solicited sex from a 14-year-old girl working as Santa's Helper at the Gadsden Mall.

## II.    The Motion to Strike (doc. 105)

Moore moved to strike the report of the Defendants' expert witness, Dr. Barbara Ziv, arguing that Ziv's report: (1) is not relevant; (2) is not reliable; and (3) fails to show a specialized knowledge that could help a trier of fact. (Doc. 95). As you can see, the court needn't rule on the admissibility of Ziv's testimony to decide the Defendants' motion for summary judgment. So the court will deny as moot Moore's motion to strike. (Doc. 105). If he likes, Moore can re-raise his objection(s) to Ziv's report and testimony in pretrial motions. (He must re-raise the objections to preserve them.).

### CONCLUSION

For these reasons, the court will **DENY** the Defendants' motion for summary judgment (doc. 135) and will **DENY as MOOT** Moore's motion to strike (doc. 95).

The court will enter a separate order that carries out these rulings.

**DONE** on May 31, 2022.


**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE